IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRITTANY JONES**, *individually and on behalf of those similarly situated*, <br> Plaintiff, <br> v. <br> **SAMSUNG ELECTRONICS AMERICA, INC.**, <br> Defendant. | Case No. 2:17-cv-00571-MAP <br><br> Judge Michael A. Ponsor |

**MEMORANDUM AND ORDER RE:**
**DEFENDANT'S MOTION TO COMPEL ARBITRATION,**
**DISMISS CLASS CLAIMS, AND STAY PROCEEDINGS AND**
**DEFENDANT'S MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, STRIKE CLASS ALLEGATIONS**
(Dkt. Nos. 13 & 16)

May 21, 2018

PONSOR, U.S.D.J.[1]

## I. INTRODUCTION

This class action lawsuit has been brought by Plaintiff Brittany Jones on behalf of herself and others in Pennsylvania, and in the United States as a whole, who purchased a Samsung S3 cell phone. The phone, according to Plaintiff, was defective in that it had a tendency to overheat and catch fire. Defendant has responded with two motions: one seeking to compel arbitration, to dismiss class claims, and to stay all proceedings (Dkt. No. 13) and the other seeking a ruling

---

[1] This case was reassigned to the undersigned judge, U.S. District Judge Michael A. Ponsor of the District of Massachusetts, Western Division, pursuant to 28 U.S.C. § 294(d). The undersigned was designated and assigned by the Chief Judge of the United States Court of Appeals for the Third Circuit to hold court in civil matters for the United States District Court for the Western District of Pennsylvania.

from the court dismissing the complaint entirely or, alternatively, striking the class allegations (Dkt. No. 16).

For the reasons set forth below, the motions will be denied. The conclusion of this memorandum will specify a date to file a discovery plan pursuant to Fed. R. Civ. P 26 (f) and a date and time for a pretrial conference pursuant to Fed. R. Civ. P. 16(a).

## II. FACTUAL BACKGROUND

The recitation of facts is drawn from the complaint itself and from undisputed representations made by counsel in their submissions and during oral argument. The background summary is limited to the facts needed to weigh the merits of Defendant's motions.

In September 2013, Plaintiff purchased a Samsung S3 cell phone ("S3") for use on the Sprint network. She purchased the phone from a Sprint retail store. After Plaintiff made her selection, the Sprint employee went into the storeroom, retrieved a box with the new phone, took it out of its packaging, and activated the phone for Plaintiff. The Sprint employee installed the battery, assisted Plaintiff in transferring information from her old phone to the new S3, and set up the phone. Plaintiff paid for the new S3 in full and left using the new phone, with her old phone in the S3 box in a Sprint bag.

The box that had held her S3 phone had a sticker on the small-end side featuring printed bar codes and a list in small font of what the box contained.[2] (Dkt. No. 15, Attach. 1.) Of the seven items noted on this list, the penultimate one stated "Important Information Booklet." The cover of the enclosed 64-page booklet stated in bold lettering, "Important Information for the

---

[2] Defendant characterizes the position of the notice as the front of the box. Review of photograph of the box reveals that the position should more accurately be described as the small-end side of the box.

Samsung SPH-L710." The booklet contained four sections: Important Safety Information; Manufacturer's Warranty; General Terms and Conditions of Service; and Important Message from Sprint. Notably, none of the section headings specifically mentioned any contract provisions, waivers, or mandatory arbitration terms that might be binding on the consumer.

Relevant to the parties' dispute here, the section titled "Manufacturer's Warranty" began on page 15. The language of this section indicated that Defendant was providing a one-year Limited Warranty that the S3 was "free from defects in material and workmanship under normal use and service." (Dkt. No. 15, Attach. 2 at 16.) By referring to this section under the title "Manufacturer's Warranty" the booklet necessarily implied that it would be addressing Defendant's obligations. Consumers do not provide warranties. Nevertheless, Defendant for undisclosed reasons decided to slip the Arbitration Agreement in the section of the booklet supposedly describing warranties. The Agreement appears four pages into this "Manufacturer's Warranty" section on page 19 of the overall booklet, under the bolded and underlined heading "What is the procedure for resolving disputes?" (Id. at 20.) In capitalized text, the booklet informs the purchaser that all disputes with Defendant "shall be resolved exclusively through final and binding arbitration, and not by a court or jury." (Id.) The next sentence states that a dispute with Defendant "shall not be combined or consolidated with a dispute involving any other person's" product. (Id.) The bottom of the booklet's page 20 and most of page 21 detail instructions on how a consumer could opt out of the arbitration requirement. However, a consumer had no more than 30 calendar days from the date of purchase of the product to do this.

It is undisputed that Plaintiff did not notify Defendant of a desire to opt out of the Arbitration Agreement within 30 days of her purchase of the S3.

In December 2016, Plaintiff left her S3 charging on a bed in her mother's home at 635 Chautauqua Street in Pittsburgh.[3] Plaintiff alleges that the phone overheated while charging and caught fire, causing over $10,000 worth of damage to the home. She brought suit to recover for those damages for herself, as well as for a class of other S3 users whose devices overheated and caused damage.[4]

On May 3, 2017, Plaintiff filed her class action suit against Defendant. The five counts in the complaint are: (I) strict liability; (II) negligence; (III) negligent misrepresentation; (IV) breach of implied warranty; and (V) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1). Defendant has responded with the motions now before the court.

### III. DISCUSSION

The standard of review for a motion to compel arbitration may vary depending on the context of the motion. Compare Noble v. Samsung Elecs. Am., Inc., 682 Fed. App'x 113, 115 (2017) (stating that "a motion to compel arbitration can be resolved under the same kind of standard applicable to a motion to dismiss") with Quilloin v. Tenet Health Sys. Philadelphia, Inc., 673 F.3d 221, 228 (3d Cir. 2012) (stating that "motions to compel arbitration are reviewed under the Federal Rules of Civil Procedure summary judgment standard"). In Guidotti v. Legal

---

[3] Plaintiff's complaint claims that the fire took place in "her" home. (Compl. ¶ 18, Dkt. No. 1.) Defendant disputed this allegation in its filings, providing evidence that the fire took place in Plaintiff's mother's home. During argument Plaintiff's counsel appeared to agree that Defendant was correct. This discrepancy, as Defendant concedes, does not affect the analysis of the motion to compel arbitration. (Dkt. No. 14 at 3 n.1.) The issue could become relevant at a later stage of the case.

[4] Defendant's information booklet also contained a section titled "Caring for the Battery." In that section, Defendant warned that reports of batteries overheating and catching fire appeared to be related to use of "counterfeit or inexpensive aftermarket-brand batteries." (Dkt. No. 15, Attach. 2 at 9-10.)

Helpers Debt Resolution, LLC, 716 F.3d 764 (3d Cir. 2013), the Court of Appeals made it clear that the appropriate standard depends on whether the motion to compel arbitration is anchored on the four corners of the complaint itself along with related cognizable documents, or requires pursuit of discovery. Where the parties rely only on the face of the complaint and incorporated documents to litigate the issue, then "a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." Id. at 776 (quotations omitted). On the other hand, if the complaint and supporting documents are unclear, then the court should permit limited discovery on the issue and evaluate the motion to compel arbitration under a summary judgment standard. Id.

Here, though the document containing the arbitration clause is not attached to the complaint, its content is undisputed, and it is plainly the basis for Defendant's motion. Neither party has suggested that any discovery is needed to ventilate the issue of the enforceability of the arbitration provision. Under these circumstances, the Rule 12(b)(6) standard of review applies to both motions: the court must accept the allegations in the complaint as true and draw all reasonable inferences in Plaintiff's favor.

**A.** **Motion to Compel Arbitration, Dismiss Class Claims, and Stay Proceedings**

Defendant contends that the information booklet provided to Plaintiff at the time she purchased the S3 contained a binding Arbitration Agreement fatal to this litigation. Plaintiff's primary response is that the Agreement was set out in such an inconspicuous manner that Plaintiff cannot reasonably be deemed to have been aware of it at the time she purchased her phone.

Some controversy seems to exist across the circuits regarding the effectiveness of

5

arbitration agreements such as the one at here issue. Circuit courts (particularly the Seventh and Ninth Circuits) have reached what appear to be different conclusions on this point. The treatment of so called "shrink wrap" or "inside-the-box" arbitration agreements within the Third Circuit, however, appears relatively straightforward, lying between the extremes.

One polar end of the shrink-wrap controversy is the perhaps outdated opinion in <u>Hill v. Gateway 2000, Inc.</u>, 105 F.3d 1147 (7th Cir. 1997), which bound the plaintiffs to an arbitration agreement included as part of a Statement of Terms inside a shipping box containing a computer. The plaintiffs argued that they should not be bound by the agreement because, while they were aware of the terms generally, they denied reading them closely enough to notice the arbitration agreement. Judge Easterbrook, writing for the Seventh Circuit, held that "[a] contract need not be read to be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome." <u>Id.</u> at 1148. In essence, the Seventh Circuit concluded that, while the plaintiffs were free to reject the terms of the defendant's contract containing an arbitration clause, the manner to accomplish that was by the terms of the contract, namely, returning the computer within thirty days. By failing to do so, the plaintiffs accepted the terms of the contract, and they were binding. <u>Id.</u> at 1149.

It must be noted that Defendant's characterization of the twenty-year old <u>Hill</u> decision as the "leading" authority in this area may overstate the significance of that case. The central issue in <u>Hill</u> was whether a consumer could be bound by arbitration language he asserted he had not read. <u>Hill</u> does not devote much time to the question of the prominence of the arbitration language. More recent cases focus not on whether consumers had <u>read</u> waiver language, but on whether they received reasonable <u>notice</u> of the existence of the language. Purchasers may be

6

bound by what they have not read, but they may not be bound by what they cannot find, or what has been (negligently or by connivance) buried in the verbal underbrush.

The more recent Ninth Circuit decision in Norcia v. Samsung Telecommunications America, Inc., 845 F.3d 1279 (9th Cir. 2017), provides a good example of this more recent trend, addressing a factual scenario nearly identical to the one before the court. Norcia involved a plaintiff purchasing an allegedly defective Samsung Galaxy phone. Faced with a class action lawsuit, Samsung moved to compel arbitration based on a clause inserted into the warranty agreement. The Ninth Circuit held that, pursuant to California contract law, the arbitration clause was unenforceable against the plaintiff because there was inadequate notice. While acknowledging the general principle that a party may be bound to contract terms regardless of whether he or she has read them -- the point at which the Seventh Circuit concluded its analysis -- the Ninth Circuit pressed on to recognize that silence does not "constitute[] consent to a contract when the offeree reasonably did not know that an offer had been made." Id. at 1285. Where the terms of a supposed contract are "inconspicuous" and "contained in a document whose contractual nature is not obvious," they are not binding. Id. The Ninth Circuit rejected the relevancy of the Seventh Circuit's Hill case, stating that under California law, "even if a customer may be bound by an in-the-box contract under certain circumstances, such a contract is ineffective where the customer does not receive adequate notice of its existence." Id. at 1289.

Third Circuit authority provides excellent guideposts in this area in two recent decisions. In Schwartz v. Comcast Corp., 256 Fed. App'x 515 (3d Cir. 2007), the Court of Appeals reversed the district court's denial of a defendant's motion to compel arbitration. In that case, the plaintiff had purchased internet services from the defendant. Comcast's practice was to

7

provide its customers, at the time they initiated services, with a "Subscriber Agreement," which contained an arbitration provision. The plaintiff's complaint acknowledged that he received services pursuant to the Subscriber Agreement, although he denied receiving a copy of it. In determining that a valid agreement to arbitrate nevertheless existed between the parties, the court stated: "Whether or not Schwartz received a copy of the subscription agreement, he could not accept services he knew were being tendered on the basis of a subscription agreement without becoming bound by that agreement." Id. at 518. In other words, since the plaintiff's use of the defendant's services was actually governed by the Subscriber Agreement, he could not disregard terms he did not like, such as the arbitration provision. He was bound by the agreement's package of terms regardless of whether he had them read them. Id. at 520. Schwartz presents an awkward fit with this case, since there is no ongoing subscriber relationship, of which the arbitration agreement constitutes a part.

Noble v. Samsung Electronics America, Inc., 682 Fed. App'x 113 (3d Cir. 2017), affirmed a lower court's denial of a motion to compel arbitration, in a case very similar to the one now before this court, involving a Samsung Smartwatch. There, as here, the plaintiff purchased the product from the cell service provider; he left the service provider's store wearing his new Smartwatch and carrying with him the product's box in a bag. The box contained a 143-page "Health and Safety and Warranty Guide." Nowhere in the Guide's table of contents was there any reference to an agreement to arbitrate. Indeed, arbitration was not even mentioned in the Guide's index, though it was eventually described at pages 97-102. When a dispute later arose, Samsung sought to compel arbitration. The plaintiff objected that he had not agreed to arbitrate, since no reasonable notice had been afforded him of the existence of any arbitration

provision. In affirming the district court's denial of Samsung's motion to compel arbitration, the Third Circuit concluded that the plaintiff was not bound by the arbitration agreement because it was "buried in a manner that gave no hint to a consumer that an arbitration provision was within." Id. at 116. The court went on to say that "[w]hile it may sometimes be presumed that consumers agree to contractual provisions of which they are on notice, that presumption is warranted only where there is a reasonable basis to conclude that consumers will have understood the document contained a bilateral agreement." Id. at 117-18. The court's discussion included a citation to Norcia. Id. at 117.

Admittedly, Noble arose under New Jersey law, while Schwartz, like this case, fell under the law of Pennsylvania. The pertinent elements necessary for the creation of a binding contract in New Jersey, however, are not significantly different from those recognized under Pennsylvania law. Compare Noble, 682 Fed. App'x at 116 (stating that under New Jersey law a binding contract requires "an offer and acceptance, consideration, a meeting of the minds, and sufficiently definite terms") with Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009) (stating that "[u]nder Pennsylvania law, contract formation requires: (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration"). The element at issue here is the mutual manifestation of an intention to be bound, or a meeting of the minds. As in Noble, Samsung cannot enforce an arbitration agreement buried inconspicuously in a booklet purporting to offer information about the product and its warranties. See Noble, 682 Fed. App'x at 118.

Putting aside the fact that the "Important Information" booklet for Samsung's S3 cell phone is slightly shorter than the one provided for Samsung's Smartwatch (64 pages rather than

9

143) this case falls precisely within the analytical paradigm set forth so helpfully in Noble. The Arbitration Agreement is never mentioned in the S3's booklet's section headings; rather, it is tucked away in the section misleadingly entitled "Manufacturer's Warranty."[5]

Defendant noted at argument that, if Samsung had wanted to make the Arbitration Agreement even more inconspicuous, it could have. This is probably true, though it would not have been easy. It is certainly true that if Samsung had actually desired to make its customers aware of the Arbitration Agreement, it would have been simple to bring the point home more clearly. Indeed, the degree of prominence of the Arbitration Agreement here seems calibrated with dual goals: on the one hand, just enough to persuade a court to smother potential litigation; on the other hand, not enough to make it likely that a consumer will actually notice the Agreement and perhaps hesitate to buy. It is one thing to hold consumers to agreements they have not read; it is another to hold them to agreements that, perhaps by design, they will probably never know about. In sum, decisions recognizing the enforceability of "shrink wrap" arbitration agreements simply do not go as far as Samsung argues, and for this reason Defendant's motion to compel arbitration must be denied.[6]

---

[5] Defendant makes much of the fact that, unlike in Noble, the small-end side of the S3 box featured a sticker that listed (along with the bar code and as the sixth of seven items in small font) the presence of an "Important Information Booklet" inside. This kind of half-hearted attempt at "notice" cannot distinguish this case from Noble, especially when the booklet itself is flatly misleading.

[6] On this point, Defendant's citation of James v. Global TelLink Corp., 852 F.3d 262 (3d Cir. 2017) is puzzling. Although the decision does note in dicta that consumers may in proper circumstances be bound by language contained in an enclosure in a shipping box, even if they have not read it, the focus of the court's analysis in James is on whether the plaintiff had received adequate notice of the contract provisions being asserted by the defendant. The central question in James, analogous to the one here, was whether the notice was "reasonably conspicuous" or concealed in "obscure sections of a webpage." Id., at 267. The court found that the notice was inadequate in James, and it affirmed the district court's denial of the motion to

B.     **Motion to Dismiss or, Alternatively, Strike Class Claims**

Defendant seeks to dismiss Plaintiff's complaint in its entirety for failure to state a claim pursuant to Rule 12(b)(6) or, in the alternative, to strike the class claims on the basis that Plaintiff cannot satisfy the requirements of Fed. R. Civ. P. 23. For the reasons that follow, this motion must be denied.

Defendant seeks dismissal of the complaint both by citing the general standards outlined in Twombly and Iqbal, and by pressing more specific arguments directed at individual claims.[7] Defendant's broad assault on the adequacy of Plaintiff's complaint may be quickly disposed of. Though Twombly and Iqbal did alter the analytical framework regarding motions to dismiss somewhat, these decisions did not undermine the Rule 8 standard of "a short and plain statement of the claim showing the pleader is entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quotations omitted). A complaint will still survive a motion to dismiss where it sufficiently puts the defendant on notice of the claims against it. Id. at 232. In addition, dismissal is improper where the complaint permits a court to draw a reasonable inference from the facts alleged "that the defendant is liable for the misconduct alleged." Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018). The rather straightforward scenario laid out in the complaint here, describing a fire caused by Defendant's allegedly defective product, is more than sufficient to state a claim under prevailing law.

Moving to Defendant's more specific arguments, the court similarly has no hesitation in concluding that, at this initial phase of litigation, the complaint is sufficiently fibrous to survive a

---

arbitrate. James, properly read, supports denial of Defendant's motion here.

[7] See Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009).

motion to dismiss.  As to Count I, Defendant first argues that Plaintiff's claim for strict liability fails to identify which of the three types of strict liability permitted under Pennsylvania law she is invoking.  Moreover, Defendant contends, Count I fails to specify what was defective about the product.  As to Count II, Defendant asserts that Plaintiff's claim for negligence is too conclusory.  See Hassen v. Government of Virgin Islands, 861 F.3d 108, 116 (3d Cir. 2017) ("Naked allegations of 'negligent' or 'purposeful' conduct at the pleading stage, without supporting facts, are to be disregarded.").  None of these arguments has traction.  Pennsylvania law does not require that the particular theory of strict liability be pled.  Moreover, under the malfunction theory of strict liability, a plaintiff does not need to identify exactly what was defective about a product.  The complaint must allege only that, eliminating abnormal use or other causes, a product malfunctioned and caused injury.  Dansak v. Cameron Coca-Cola Bottling Co., Inc., 703 A.2d 489, 495-96 (Pa. 1997).   Further scrutiny may await discovery, then summary judgment or trial.

Defendant next argues that Plaintiff's claim for negligent misrepresentation (Count III) must be dismissed because she failed to plead it with particularity, pursuant to Fed. R. Civ. P. 9(b), and did not identify any specific statement that constituted a misrepresentation.  Again, these arguments fail.  The question whether a negligent misrepresentation claim must be pled with particularity appears to be unsettled.  McLaughlin v. Bayer Corp., 172 F. Supp. 3d 804, 829 (E.D. Pa. 2016) (recognizing a lack of consensus among courts in the Eastern District of Pennsylvania regarding whether claims of negligent misrepresentation are held to the heightened pleading standards of Fed. R. Civ. P. 9(b)).  Here, however, even if particularity is required, the heightened pleading standard has been met because the complaint offers sufficient "precision and some measure of substantiation" in its allegations.  Abdelgawad v. Mangieri, Civ. No. 14-

1641, 2015 WL 13216852, at *2 (W.D. Pa. Dec. 11, 2015).[8]

As to the last two counts (Counts IV and V), Defendant asserts that Plaintiff's implied warranty of merchantability and Magnuson-Moss claims fail because Pennsylvania law permits manufacturers to limit warranties. The terms of Defendant's warranty expressly limit it to a period of one year and the available remedy to repair or replacement of the product. Though Plaintiff's complaint alleges that the warranty is unconscionable because of Defendant's failure to warn of a known defect, it fails, according to Defendant, to identify the specific defect or how Defendant knew about it. At this stage of the litigation, again, Plaintiff has alleged sufficient facts to support a plausible claim. See Martin v. Ford Motor Co., 765 F. Supp. 2d 673, 683 n.6 (E.D. Pa. 2011) (denying a motion to dismiss where the complaint alleged that "the time-limitation on the warranty was unconscionable because Defendant knew that the product it sold was defective and that the defect would not surface until the warranty had expired").

Finally, Defendant argues that, at a minimum, the court should strike Plaintiff's class claims. Defendant asserts that product liability cases are not suited to class resolution because they require inquiry into each individual class members' particular injury or damage. For example, one possible defense to a class member's claim might be that the consumer used a different manufacturer's battery or otherwise tampered with the product. Differing circumstances of this sort, according to Defendant, would necessitate mini-trials for each class

---

[8] Defendant argues that Plaintiff's complaint contains no allegations supporting the existence of proper damages. Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002). On this point, the question of where the fire caused by the S3's defect took place -- i.e., at Plaintiff's mother's home or Plaintiff's home -- may or may not have relevance. At the motion to dismiss stage, the court must weigh the sufficiency of the allegations as set forth in the complaint itself. The damage issue may be explored in discovery and raised via a motion for summary judgment or at trial.

member to determine whether there were other causes for the malfunction of the S3. See Marcus v. BMW of North America, LLC, 687 F.3d 583, 600 (3d Cir. 2012) (stating that the typicality requirement for class certification is undermined where unique defenses are a focus of the litigation). Moreover, Defendant contends, Plaintiff's proposed class constitutes an improper so-called "fail-safe class." Randleman v. Fidelity Nat. Title Ins. Co., 646 F.3d 347, 352 (3d Cir. 2011) ("Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment.").

Once more, these arguments are unpersuasive, at least at this stage of the litigation. As the Third Circuit has stated, it has "never required the presentation of identical or uniform issues or claims as a prerequisite to certification of a class." Sullivan v. DB Invs., Inc., 667 F.3d 273, 301 (3d Cir. 2011) (en banc). Equally importantly, Plaintiff is entitled to take discovery and submit a motion for class certification based on what is disclosed. The court may take up the arguments now offered by Defendant at that time; striking the class allegations would be premature now.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration, Dismiss Class Claims, and Stay All Proceedings (Dkt. No. 13) and Motion to Dismiss or, Alternatively, Strike the Class Allegations (Dkt. No. 16) are hereby DENIED. The parties shall file a discovery plan pursuant to Fed. R. Civ. P 26 (f) by June 4, 2018. Counsel shall appear for a pretrial scheduling conference, either in person or, upon notice to the court, via video at 11:30 a.m. on June 12, 2018. If Defendant files a notice of appeal of the court's ruling on its motion to compel arbitration as is its right under 9 U.S.C. § 16, then the deadline for filing the discovery plan and the date for the pretrial conference will be vacated, and the case will be stayed pending the

appeal.

It is So Ordered.

                                          /s/ Michael A. Ponsor
                                          MICHAEL A. PONSOR
                                          United States District Judge